IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01106-PAB

ALEXANDER MADRID,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.
_____

# ORDER
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Alexander Madrid on May 13, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On October 24, 2013, plaintiff applied for disability insurance benefits under Title II of the Act. R. at 20. Plaintiff alleged that he had been disabled since July 1, 2006. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on September 30, 2015. *Id*. At the hearing, plaintiff amended the alleged disability onset date to July 1, 2012. *Id.* On

---

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

October 15, 2015, the ALJ issued a decision denying plaintiff's claim. *Id.* at 20-27. The ALJ found that plaintiff had the following severe impairments: traumatic brain injury and a cognitive disorder not otherwise specified. *Id*. at 23. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 24, and found that plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR § 404.1567(c). *Id.* The ALJ also concluded that "[plaintiff] is limited to simple, routine work with an SVP of 1-2 and minimal changes in duties. He cannot perform production-rate work and needs to use a list as a memory aid." *Id*. Based upon this RFC the ALJ concluded that plaintiff was capable of performing his past relevant work as a laborer. *Id*. at 27.

After the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council that was not before the ALJ at the time of the decision. R. at 222-235. On March 17, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's denial of his claim. *Id*. at 1. Given the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

3

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied [his] burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of [his] age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

4

**C. The ALJ's Decision**

Plaintiff argues that the ALJ erred by (1) incorrectly evaluating the severity of plaintiff's mental impairment; (2) failing to give adequate consideration to the VA rating decision that plaintiff's brain injury and cognitive impairment rendered him permanently and totally disabled; and (3) finding that plaintiff can return to his past relevant work. Docket No. 13 at 5-6. The Court will address only the first of these arguments, which is dispositive. *Cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

Plaintiff raises several objections to the ALJ's treatment of the medical evidence that he used to define plaintiff's RFC. First, plaintiff argues that the ALJ failed to take into account plaintiff's mental limitations as identified by psychologist Donna Peters. Second, he claims that the ALJ failed to provide sufficient reasons for discounting Dr. Peters' medical opinion. Docket No. 13 at 22. Third, he argues that the ALJ erred by failing to discuss Dr. Angelica Munger's medical opinion. Docket No. 13 at 20.

### 1. Psychologist Donna Peters

The Court will discuss plaintiff's first two arguments regarding Dr. Peters together. Psychologist Donna Peters examined plaintiff and prepared a report dated February 15, 2013. R. at 253-265. She administered several tests to plaintiff, including the Saint Louis University Status Examination ("SLUMS") and the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"). *Id*. at 255-56. Plaintiff scored 21/30 on the SLUMS. *Id*. at 255. On the RBANS, Dr. Peters found that plaintiff

5

had profoundly impaired immediate memory and delayed memory, low-average language and attention, and average visuospacial construction. *Id*. at 256. Plaintiff's total RBANS score was in the severely impaired range. *Id.*

Dr. Peters concluded that plaintiff had "significant cognitive impairment secondary to dementia pugilistica." *Id.* at 256.[2] She also concluded that plaintiff "has difficulties tracking in conversations and difficulty following verbal directions and commands. He has to have verbal directions repeated multiple times for retention." With respect to plaintiff's ability to work, Dr. Peters concluded as follows:

> [Plaintiff] is likely not able to be employed in any traditional job. He would struggle to learn a new trade and his work opportunities are likely limited. [Plaintiff] would struggle with learning new information and would likely need to work in a position that includes repetitious activities.

*Id.* at 257.

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). An ALJ must also determine what weight to give medical opinions. In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d). *Id.* Those factors include:

---

[2]According to Dr. Peters' report, "dementia pugilista is a form of dementia that poses long-term serious threat to individuals involved in heavy contact sports, such as boxing, and who have sustained multiple concussions throughout their lives. Dementia pugilistica is also known as punch-drunk syndrome or boxers' dementia. The dementia can develop after a latent period of years, sometimes more than a decade before symptoms of the condition arise. . . . Signs and symptoms of dementia pugilistica include progressively declining cognitive ability, short-term memory loss, physical tremors, loss of physical coordination, difficulties in speech, changes in gait." R. at 256-57. Plaintiff began boxing at age ten. R. at 254. While in the U.S. Army from 1980 to 1984, he participated in approximately fifty boxing matches. R. at 255.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted). Although the ALJ does not need to discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ must consider every factor in determining the weight to assign a medical opinion and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (internal quotation marks and brackets omitted); *Romo v. Berryhill*, No. 16-cv-02248-WJM, 2017 WL 3911071, at *5 (D. Colo. September 7, 2017).

The ALJ did not discuss Dr. Peters' conclusions in detail. He noted plaintiff's score on the SLUMS test, but did not mention the results of the RBANS testing. R. at 26. The ALJ found that, although plaintiff does "exhibit some cognitive defects . . . the claimant was given a Global Assessment of Functioning [] score of 55, indicating no more than a moderate functional impairment." *Id.* at 26. The ALJ, however, was not entitled to focus on plaintiff's Global Assessment of Functioning while ignoring evidence that plaintiff has specific impairments in memory and language. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

7

In relating Dr. Peters' opinion to plaintiff's RFC, the ALJ was required to express plaintiff's mental impairments "in terms of work-related functions" or "[w]ork-related mental activities." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished). The ALJ found that plaintiff was limited to "simple routine work with an SVP of 1-2 and minimal changes in duties," so long as such work was not production-rate and plaintiff could use a list as a memory aid. R. at 24. None of these limitations takes into account the deficits that Dr. Peters identified in plaintiff's ability to understand verbal instructions, and the ALJ provided no explanation or citation to the record concerning how a memory aid could or would address plaintiff's "profoundly impaired" immediate or delayed memory. Because the ALJ erred in incorporating plaintiff's mental impairments in the RFC, the ALJ correspondingly failed to include plaintiff's impairments in the hypothetical posed to the Vocational Examiner ("VE"). *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (explaining that a hypothetical inquiry to a VE "must include all (and only) those impairments borne out by the evidentiary record"); *Jaramillo*, 576 F. App'x at 876 ("The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [in plaintiff's ability to carry out instructions, attend and concentrate, and work without supervision]."). This was reversible error. *Id.*

### 2. Angelica Munger, M.D.

On February 15, 2013, plaintiff was examined by Angelica Munger, M.D. R. at 265. Dr. Munger diagnosed plaintiff with traumatic brain injury and tension

headaches. *Id.* at 267, 276. Dr. Munger also noted the following "functional status" for plaintiff:

> Basic ADLs - Able to dress, eat, write, cook and do his personal hygiene.
> Driving - Limited to 45 minutes due to low back pain.
> Sitting - limited to 30 minutes due to low back pain.
> Standing - Limited to 30 minutes due to low back pain.
> Walking - Limited to one mile due to low back pain.
> Running - Limited to half a mile due to low back pain.
> Stairs - Able to climb one flight without difficulty.
> Lifting - Limited to 25 pounds due to low back pain.

*Id.* at 268. The ALJ made no mention of Dr. Munger's opinion.

As noted above, an ALJ is required to consider every medical opinion in the record and provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ failed to do so here. The Commissioner argues that the ALJ's failure to consider Dr. Munger's opinion does not warrant reversal for two reasons: first, because plaintiff waived his argument by failing to "explain what aspects of the ALJ's decision are inconsistent with Dr. Munger's medical opinions" and, second, because Dr. Munger found that plaintiff's traumatic brain injury and tension headaches did not diminish plaintiff's ability to work. Docket No. 14 at 7-8.

As to the first argument, plaintiff's opening brief describes Dr. Munger's findings in depth and states that the ALJ failed to mention or discuss Dr. Munger's opinion. Moreover, plaintiff cites Dr. Munger's opinion in support of plaintiff's various arguments. Docket No. 13 at 10-11, 20, 22, and 27. The Court finds that plaintiff has sufficiently stated his argument so as to avoid waiver. Defendant argues that, in the absence of inconsistencies between Dr. Munger's medical evaluation and the ALJ's opinion, the ALJ was not required to expressly consider Dr. Munger's opinion. Docket No. 14 at 7.

9

While it is true that, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened," *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004), the ALJ is still required to acknowledge the relevant medical evidence. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-65 (10th Cir. 2012) (finding no error where the ALJ described several non-contradictory medical opinions, but did not expressly assign a weight to each). Moreover, the ALJ failed to incorporate or discuss Dr. Munger's findings with respect to plaintiff's headaches and back pain. The ALJ made no finding with respect to plaintiff's headaches and found that "[t]he available medical record does not contain any documentation of [pain-related] complaints, however, and no diagnoses or objective findings to substantiate the existence of any severe back, hand or other musculoskeletal conditions." R. at 23.

With respect to the Commissioner's second argument, that the ALJ did not err because Dr. Munger found that plaintiff's impairments did not affect plaintiff's ability to work, the Court may not "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

It was error for the ALJ to fail to consider Dr. Munger's medical opinion. On remand, the ALJ should determine the appropriate weight to be given to Dr. Munger's diagnoses and the impact the limitations identified in her report have on plaintiff's RFC.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 12, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge